1

2

3

4

5

6              IN THE UNITED STATES DISTRICT COURT

7            FOR THE EASTERN DISTRICT OF CALIFORNIA

8  LLOYD RALPH OLSON, III,          )
                                    ) No. CV-06-2885 RHW JPH
9          Petitioner,              )
                                    ) REPORT AND RECOMMENDATION TO
10  v.                              ) DENY WRIT OF HABEAS CORPUS
                                    )
11  DAVID L. RUNNELS,               )
                                    )
12          Respondent.             )
                                    )
13                                  )
                                    )
14  _____)

15     **BEFORE THE COURT** is a Petition under 28 U.S.C. § 2254 for

16  Writ of Habeas Corpus by a person in state custody (Ct. Rec. 1)

17  and Respondent's Answer and Memorandum of Authorities (Ct. Rec.

18  12).  Conrad Petermann represents Petitioner.  Respondent is

19  represented by Deputy Attorney General Stephanie A. Mitchell.

20  Petitioner filed a traverse on May 13, 2007. (Ct. Rec. 14.)  This

21  matter was heard without oral argument.  After careful review and

22  consideration of the pleadings submitted, it is recommended that

23  the Petition for Writ of Habeas Corpus be **denied.**

24     At the time his petition was filed, Petitioner was in custody

25  in Susanville, California, pursuant to his 2003 Sacramento County

26  conviction for attempted murder and discharging a firearm at an

27

28

REPORT AND RECOMMENDATION TO DENY
WRIT OF HABEAS CORPUS
- 1 -

occupied vehicle, both with firearm enhancements.  (Ct Rec. 1 at

p. 4-5.)  Petitioner challenges the 2003 Sacramento County

conviction.  (Ct. Rec. 1.)

**I. BACKGROUND**

**A. Factual History**

The Third District Court of Appeal described the facts:

The instant offenses occurred on November 10, 2002, following
an earlier altercation between the victim and another man,
Charles Haynes, who had apparently reported to police that
the victim had taken his stereo. The victim went to Melvin
Vaughn's house to try to locate Haynes because that was where
the victim had met him. The victim spoke with Vaughn outside
the house, and at one point Haynes and another man, Marcel
Burnett, arrived. The victim was a much larger man than
Haynes.

The victim confronted Haynes and hit him after Haynes swore.
Haynes fell down, and then got up and told the victim he
would be back. Haynes then ran away, yelling threats and
insults. The victim exchanged words with Burnett following
the altercation with Haynes, and Burnett
subsequently left.

Forty-five minutes to an hour later, the victim returned to
his vehicle. He noticed Haynes, Burnett, and two other
persons (later identified as [Petitioner] and Kenny Jordan)
in Haynes's Ford Explorer, which was parked facing eastbound
on a nearby street — in the direction the victim intended to
drive home. As he backed up, the victim noticed the Explorer
had been moved to face westbound. The victim was concerned
that Haynes and the other men were going to "jump" him so he
stopped nearby. Haynes and Burnett got out of the Explorer
and walked toward Vaughn's house, and [Petitioner] and Kenny
Jordan walked toward the victim's truck.

The victim said something to the effect of: "[W]ho's going to
get their ass whipped first[?]" [Petitioner] took out a gun
from his sweatshirt and said, "I'm not here to fight you."
The victim tried to drive away but crashed into Haynes's
Explorer, and the engine on the victim's truck stopped.
[Petitioner] walked up to the driver's window of the victim's
truck and started firing at the victim.  The victim sustained
multiple gunshot wounds and was seriously injured.

Police found [Petitioner] and Jordan after the incident.
Police traced their route away from the scene and found a
handgun in a holster that was partially concealed by some

greenery. The gun was a .22 caliber Smith and Wesson, and it contained six Federal brand spent shell casings. In the back of Haynes's Explorer, police found a box containing 29 Remington brand .22 caliber long-rifle cartridges.

[Petitioner's] Testimony

[Petitioner] testified that he had never met the victim, Haynes, or Burnett before the day of the shooting. Jordan was dating [Petitioner's] sister and was present at an apartment where [Petitioner] had spent the previous night. At some point, Haynes came to the apartment and talked with Jordan in the kitchen. Jordan subsequently asked if [Petitioner] wanted to "go for a ride," which [Petitioner] thought meant leaving to smoke marijuana. [Petitioner] left with Haynes and Jordan. [Petitioner] had the loaded .22 caliber gun concealed inside his sweatshirt. He carried the gun for protection after he was involved in a fight two years earlier and some people threatened to pistol whip him and kill him. [Petitioner] denied taking any additional ammunition with him or being aware of the box of ammunition in Haynes's car.

Burnett was waiting in the car. [Petitioner] said that the other men talked during the ride. He only overheard part of the conversation but did remember hearing about Haynes's stereo being stolen. They stopped at one point and got out of the Explorer. Haynes, Burnett, and Jordan walked toward the corner; [Petitioner] assumed they were going to get some marijuana. The victim drove his truck in reverse on the wrong side of the street and stopped near the corner.  He said: "[W]hich one of you guys want to get run over first?" [Petitioner] initially thought the victim was joking.

The victim drove straight toward everyone and barely missed [Petitioner] before striking Haynes's Explorer. The victim tried to restart his truck. [Petitioner] thought his life was in danger and that the victim was trying to run them over. [Petitioner] took out his gun and fired at  the victim to prevent him from continuing to try to kill them. [Petitioner] claimed he was not trying to kill anyone.  He fled when he ran out of ammunition and saw the victim lean over; [Petitioner] was concerned the victim was going to grab a gun but admitted he never saw one. [Petitioner] panicked and disposed of the gun, and he  claimed that he lied to police about his involvement in the incident because he did not trust them.

(Lodged Doc. 4 at 2-5.)

**B.  Procedural History**

As indicated, after a jury trial in the Sacramento County,

REPORT AND RECOMMENDATION TO DENY
WRIT OF HABEAS CORPUS
- 3 -

1   California Superior Court, the Petitioner was found guilty of

2   attempted murder[1] and discharging a firearm at an occupied

3   vehicle[2], both with personally and intentionally discharging a

4   firearm that proximately caused great bodily injury.[3] (Clerk's

5   Transcript at 159-162, 166-167.) With respect to count one, the

6   trial court sentenced defendant to seven years for attempted

7   murder and 25 years to life for the firearm enhancement. The court

8   imposed and stayed the sentence and firearm enhancement on count

9   two. (Clerks' Transcript at 206-209.) After trial, defendant

10   appealed and the Third Appellate District affirmed. (Lodged

11   Document 4.) The California Supreme Court denied Mr. Olson's

12   petition for review on August 31, 2005. (Lodged Document 6.)

13   On October 3, 2005, Mr. Olson filed a petition for a writ of

14   habeas corpus in the Sacramento County Superior Court. (Lodged

15   Document 7.)  The court denied his petition on November 22, 2005.

16   (Lodged Document 8.) Mr. Olson filed a petition for a writ of

17   habeas corpus in the Third District Court of Appeal on March 30,

18   2006. The court denied the petition on April 13, 2006. (Lodged

19   Documents 9,10.) Mr. Olson petitioned the California Supreme Court

20   for review on April 24, 2006.  The court considered the petition,

21   the People's answer, and Mr. Olson's reply.  The court denied

22   review on June 27, 2006. (Lodged Documents 11,12,13 and 14.)

23   Mr. Olson timely filed the current federal habeas petition on

24

25   [1]in violation of Ca. Penal Code, § 187, subd. (a) 664;

26   [2]in violation of Cal. Penal Code, § 246;

27   [3]in violation of Cal. Penal Code § 12022.53, subd. (d);

28

REPORT AND RECOMMENDATION TO DENY
WRIT OF HABEAS CORPUS
- 4 -

1  December 22, 2006. (Ct. Rec. 1.)

2  **C. Federal and state claims**

3       In his federal habeas petition, Mr. Olson raises the
4  following claims:

5  Federal habeas claim one: Trial counsel inadequately investigated
6  and failed to present expert testimony in violation of Mr. Olson's
7  Sixth Amendment right to effective assistance of counsel. (Ct.
8  Rec. 1 at 21-45.)

9  Federal habeas claim two: Trial counsel failed to call available
10 fact witnesses to substantiate self-defense, in violation of Mr.
11 Olson's Sixth Amendment right to effective assistance of counsel.
12 (Ct. Rec. 1 at 45-55.)

13 Federal habeas claim three: The state court deprived Mr. Olson of
14 his constitutional rights by denying an evidentiary hearing on
15 claimed ineffective assistance of counsel. (Ct. Rec. 1 at 81-84.)

16 Federal habeas claim four: The trial court excluded evidence of
17 the victim's "violent, dangerous character" in violation of the
18 Fifth, Sixth and Fourteenth Amendments. (Ct. Rec. 1 at 55-84.)

19      In the state's highest court or the highest court rendering a
20 reasoned decision, Mr. Olson raised the following issues:

21 State court claim one: Petitioner was denied his Sixth Amendment
22 right to the effective assistance of counsel by trial counsel's
23 failure to adequately investigate and employ relevant experts "to
24 provide the jury with the explanation and defense why this was
25 attempted manslaughter and not attempted murder." (Lodged Doc. 7
26 at 14.)

27 State court claim two: Trial counsel was ineffective because he

28

REPORT AND RECOMMENDATION TO DENY
WRIT OF HABEAS CORPUS
- 5 -

1  failed to call available [factual] witnesses to substantiate self-
2  defense, in violation of the Sixth Amendment. (Lodged Doc. 7 at
3  14.)
4  State court claim three: The trial court violated Mr. Olson's
5  rights under the Fifth, Sixth and Fourteenth Amendments by
6  excluding evidence of the victim's "violent, dangerous character."
7  (Lodged Document 1 at 9-26, Lodged Doc. 3 at 3-5.)
8  State court claim four: The state court violated Mr. Olson's
9  constitutional rights by denying an evidentiary hearing on his
10  claims of ineffective assistance of counsel.  (Lodged Doc. 7 at
11  36-41.)

12  **II. EXHAUSTION OF STATE REMEDIES**

13      As a preliminary issue, Petitioner must have exhausted his
14  state remedies before seeking habeas review.  The federal
15  courts are not to grant a writ of habeas corpus brought by a
16  person in state custody pursuant to a state court judgment
17  unless 'the applicant has exhausted the remedies available in
18  the courts of the State.' *Wooten v. Kirkland*, 540 F. 3d 1019,
19  1023 (9th Cir. 2008), citing 28 U.S.C. §2254(b)(1)(A).  "This
20  exhaustion requirement is 'grounded in principles of comity' as
21  it gives states 'the first opportunity to address and correct
22  alleged violations of state prisoner's federal rights.'" *Id.*,
23  citing *Coleman v. Thompson*, 501 U.S. 722, 731 (1991).

24      In order to exhaust state remedies, a petitioner must have
25  raised the claim in state court as a federal claim, not merely as
26  a state law equivalent of that claim.  See *Duncan v. Henry*, 513
27  U.S. 364, 365-66 (1995).  The state's highest court must be

28

REPORT AND RECOMMENDATION TO DENY
WRIT OF HABEAS CORPUS

alerted to and given the opportunity to correct specific alleged violations of its prisoners' federal rights. *Id.,* citing *Picard v. Connor*, 404 U.S. 270, 275 (1971). To properly exhaust a federal claim, the petitioner is required to have presented the claim to the state's highest court based on the same federal legal theory and the same factual basis as is subsequently asserted in federal court. *Hudson v. Rushen*, 686 F. 2d 826, 829-30 (9th Cir. 1982), *cert. denied*, 461 U. S. 916 (1983).

Respondent may waive the exhaustion requirement. *See* 28 U.S.C. § 2254 (b)(3) ("A state shall not be deemed to have waived the exhaustion requirement or be estopped from reliance on the requirement unless the state, through counsel, expressly waives the requirement.") In his answer to the petition, Respondent admits that "[i]t appears that the claims raised in the Petition are exhausted to the extent interpreted by Respondent herein." (Ct. Rec. 12 at 2.) This clearly constitutes an express waiver by counsel of the exhaustion requirement. *See Dorsey v. Chapman*, 262 F. 3d 1181, 1187 at n. 8 (11th Cir. 2001). Generally, a habeas court may, in its discretion reach the merits of a habeas claim or may insist on exhaustion of state remedies despite a State's waiver of the defense. *See Boyd v. Thompson*, 147 F. 3d 1124, 1127 (9th Cir. 1998). The court's discretion should be exercised to further the interests of comity, federalism, and judicial efficiency. *See id.* It appears to advance the interests of the parties and judicial efficiency (without unduly offending the interests of either comity or federalism) for the Court to decide these claims on the merits, as more fully discussed herein.

1    Respondent concedes that because Petitioner has properly
2 exhausted his federal habeas claims, the federal court should
3 consider the claims but deny each on the merits. (Ct. Rec. 12 at
4 9-20).

5    Federal habeas claim one   Mr. Olson's first federal habeas
6 claim is that trial counsel failed to adequately investigate and
7 employ relevant experts, amounting to  ineffective assistance in
8 violation of the Sixth Amendment. (Ct. Rec. 1 at 21-45.)   Mr.
9 Olson raised the same claim based on the same facts and invoking
10 federal law in the state's highest court that rendered a reasoned
11 decision. (Lodged Document 7 at 14-32.)   Respondent is correct
12 that Mr. Olson exhausted his first federal habeas claim. *See*
13 merits herein.

14   Federal habeas claim two   Mr. Olson claims trial counsel's
15 representation was ineffective because he failed to call available
16 fact witnesses to support his claim of self-defense. (Ct. Rec. 1
17 at 45-55.) Mr. Olson raised the same claim based on the same facts
18 and cited federal law in support of this argument to the state's
19 highest court that rendered a reasoned decision.  (Lodged Doc.7 at
20 33-38.) Respondent is correct that Mr. Olson exhausted his second
21 federal habeas claim. *See* merits herein.

22   Federal habeas claim three   Mr. Olson claims the state court
23 deprived him of his constitutional by denying an evidentiary
24 hearing with respect to ineffective assistance of counsel.  (Ct.
25 Rec. 1 at 81-84.)  In the state's highest court issuing a reasoned
26 decision, Mr. Olson made the same argument based on the same facts
27 and cited supporting federal law. (Lodged Doc. 7 at 36-41.)

28

REPORT AND RECOMMENDATION TO DENY
WRIT OF HABEAS CORPUS
- 8 -

Respondent is correct. Mr. Olson exhausted his third federal habeas claim.

Federal habeas claim four  Mr. Olson's fourth federal habeas claim is that the trial court erred by excluding evidence of the victim's violent character. (Ct. Rec. 1 at 55-79.)  In the state's highest court issuing a reasoned decision, Mr. Olson made the same argument based on the same facts and cited supporting federal law. (Lodged Doc. 1 at 9-26, Lodged Doc. 3 at 3-5.) Respondent is correct that Mr. Wright exhausted his fourth federal habeas claim.

In sum, Mr. Olson has exhausted all four federal habeas claims.

**III. PROCEDURAL DEFAULT**

Having determined Petitioner has exhausted federal habeas claims one through four, the undersigned considers the applicability of the procedural default doctrine (see e.g., *Calderon v. United States District Court*, 96 F. 3d 1126, 1129 (9th Cir. 1996); *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) and finds it does not apply to Mr. Olson's claims.  The superior court denied both ineffective assistance of counsel arguments (claims one and two) after finding Mr. Olson failed to establish prejudice resulting from counsel's representation.  (Lodged Doc. 8 at 1-3.) Clearly the court reached the issue on the merits, rather than relying an independent and adequate state procedural rule or state procedural bar.  See *Harris v. Reed*, 489 U.S. 255, 260-263 (1989).

Mr. Olson's third habeas claim is that he is entitled to an

REPORT AND RECOMMENDATION TO DENY
WRIT OF HABEAS CORPUS
- 9 -

evidentiary hearing on his claims of ineffective assistance of counsel.  Respondent may be correct that Mr. Olson failed to diligently pursue efforts to develop a factual basis for the claim in state court (Ct. Rec. 12 at 33-36); however, because Mr. Olson at least raised the issue in the state court (Lodged Doc. 7 at 38-41), the undersigned elects to set aside the question of possible procedural default and consider Mr. Olson's third claim on the merits.

The Third Appellate District found, with respect to Mr. Olson's fourth claim, that the trial court properly exercised its discretion by excluding evidence of the victim's violent character and no constitutional deprivation resulted from the exclusion. (Lodged Doc. 4 at 5-10.)  Because the Third Appellate District decided the issue on the merits, procedural default is similarly not applicable.

**IV.  MERITS**

**A.  Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), applicable here, a federal court may grant habeas relief if a state court adjudication resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, or resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence. 28 U.S.C. § 2254 (d).  "AEDPA does not require a federal habeas court to adopt any one methodology in deciding the only question that matters under § 2254(d)(1) – whether a state court decision

1  is contrary to, or involved an unreasonable application of,

2  clearly established federal law." *Lockyer v. Andrade*, 538 U.S.

3  63, 71 (2003), referring to  *Weeks v. Angelone*, 528 U.S. 225 at

4  237 (2000).  Where no decision of the Supreme Court "squarely

5  addresses" an issue or provides a "categorical answer" to the

6  question before the state court, § 2254(d)(1) bars relief. *Moses*

7  *v. Payne*, 543 F. 3d 1090, 1098 (9th Cir. 2008), relying on *Wright*

8  *v. Van Patten*, 552 U.S. 120, 128 S. Ct. 743, 746 (2008); *Carey v.*

9  *Musladin*, 549 U.S. 70 (2006).

10      Federal courts apply the *Brecht* standard to determine whether

11  a constitutional error was harmless.  *Fry v. Pliler,* 551 U.S. 112

12  (2000)*; Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993).  Habeas

13  relief is warranted only if the error had a "substantial and

14  injurious effect or influence in determining the jury's verdict."

15  *Brecht,* 507 U.S. at 637 ((citing *Kotteakos v. United States,* 328

16  U.S. 750, 776 (1946)); *Bains v. Cambra*, 204 F. 3d 964, 977-78 (9th

17  Cir.) *cert. denied*, 531 U.S. 1037 (2000)).  That is, the

18  Petitioner is entitled to habeas relief only if he can show that

19  any constitutional violation "resulted in actual prejudice."

20  *Brecht,* 507 U.S. at 638 (internal citation omitted).

21  **B.   Federal claim one: ineffective assistance by failing to**

22  **present PTSD evidence**

23      The Petitioner's first ineffectiveness claim is that trial

24  counsel's representation was deficient because he failed to

25  adequately investigate and employ experts with respect to Mr.

26  Olson's alleged post-traumatic stress disorder (PTSD).  (Ct. Rec.

27  1 at 21-45.)  As the superior court (the highest state court

28

1  ruling on the issue in a reasoned decision) noted:

2           Petitioner claims that trial counsel should have
3      presented evidence that Petitioner suffered from PTSD,
       and that as a result, he had a good faith but unreasonable
4      fear rendering the shooting an attempted involuntary
       manslaughter instead of attempted murder. In support of
5      this claim, Petitioner has attached his declaration,
       detailing 3 incidents: (1) a former friend threatened to
6      pistol whip and shoot him; (2) he was the victim of a
       robbery while working at Taco Bell; and (3) he was the
7      victim of a second robbery at Taco Bell. He also attaches
       medical records showing that he was taken via ambulance
8      to the hospital on February 3, 2002, apparently during a
       work-place injury, supporting Petitioner's claim that he
9      was injured at Taco Bell. Lastly, the petition attaches
       the declaration of Dr. Kaser-Boyd, which concludes that
10     Petitioner was suffering from PTSD at the time he shot
       victim Williams, which explained some of his behaviors
11     on  the date of the crime.

12          Petitioner claims that trial counsel should have
       presented evidence of PTSD during trial. However, he has
13     not shown that counsel was even aware of the facts that
       would have supported a PTSD defense. Petitioner's
14     declaration (Exhibit 8) describes the three traumatic
       experiences, but only states he told "trial counsel about
15     *much of the above history*." (Exhibit 8 at p. 3; emphasis
       added.) Petitioner does not state that he told counsel
16     *all* of the facts or even any of the facts about the two
       Taco Bell events. Therefore, in the absence of evidence
17     that counsel had notice of the traumatic experiences,
       counsel's failure to present such evidence is not
       unreasonable.
18
19          Even if counsel's failure to raise a PTSD defense
       was deficient, Petitioner cannot show that he was
20     prejudiced. Petitioner raised the defense of self-defense
       at trial. The prosecutor conceded that if the jury
21     believed Petitioner's version of the events, that
       Petitioner was entitled to acquittal because the facts
22     would have supported perfect self-defense. Since
       Petitioner was convicted, the jury must have rejected
23     Petitioner's testimony and accepted Williams's testimony.
       If the jury believed Williams's testimony, PTSD would not
24     have played any part in diminishing Petitioner's
       responsibility. In summary, Williams testified that
25     Petitioner approached Williams and brandished the weapon.
       Williams tried to flee, but hit Haynes's car. Petitioner
26     came up to Williams's window and started shooting.
       Petitioner's conduct before the shooting, as evidenced by
27     the fact that he went to the area with the intent to
       confront Williams, while armed and while Jordan was also
       armed with a hammer, and brandished the weapon in response
28

REPORT AND RECOMMENDATION TO DENY
WRIT OF HABEAS CORPUS

1   to Williams's verbal assault, demonstrates that he was
    [sic] the aggressor was not entitled to self-defense.
2   (See CALJIC Nos. 5.54 and 5.55.) Petitioner's subsequent
    conduct, including fleeing the scene, discarding the
3   weapon and identifiable clothing, and lying to police,
    indicates consciousness of guilt, not a reasonable belief
4   in the need for self-defense. Therefore, the presentation
    of a PTSD defense is not reasonably likely to have
5   produced a different result.

6   (Lodged Doc. 8 at 2-3.)

7       *Strickland's* two-pronged test requires a showing of

8   deficient performance and prejudice to the defendant. *Strickland*

9   *v. Washington*, 466 U.S. 668, 688-689 (1984). To satisfy the first

10  prong, a petitioner must show that, considering all the

11  circumstances, counsel's performance fell below an objective

12  standard of reasonableness. (*Id.*, at 688.) This requires

13  identifying the acts or omissions that are alleged to not have the

14  result of reasonable professional judgment. (*Id.*, at 690.) The

15  federal court then determines whether, in light of all the

16  circumstances, the acts or omissions were outside the wide range

17  of professional competent assistance. (*Id.*) In making this

18  determination, there is a strong presumption "that counsel's

19  conduct was within the wide range of reasonable assistance, and

20  that he exercised acceptable professional judgment in all

21  significant decisions made." *Hughes v. Borg*, 898 F. 2d 695 (9th

22  Cir. 1999), citing *Strickland*, 466 U.S. at 689.

23      Second, a petitioner must prove prejudice. See *Strickland*,

24  466 U.S. at 693. Prejudice is established when "there is a

25  reasonable probability that, but for counsel's unprofessional

26  errors, the result of the proceeding would have been different."

27  (*Id.* at 694.) A reviewing court "need not determine whether

28

REPORT AND RECOMMENDATION TO DENY
WRIT OF HABEAS CORPUS
- 13 -

counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice. . . . that course should be followed." *Pizutto v. Arave*, 280 F.3d 949, 955 (9th Cir. 2002), quoting *Strickland*, 466 U.S. at 697.

Counsel's failure to present evidence of PTSD is not deficient because, as the state court found, Mr. Olson does not establish that the decision prejudiced him.  At trial Mr. Olson presented evidence of self-defense, which the jury apparently rejected.  Counsel's chosen defense, self-defense, was a tactical decision which would have resulted in acquittal had the jury accepted Mr. Olson's rather than Mr. Williams's testimony, as the prosecutor and superior court acknowledged.  The chosen defense precluded admitting evidence of PTSD because it would have been inconsistent with and irrelevant to Mr. Olson's asserted "pure" self-defense.  The undersigned agrees with the superior court that Mr. Olson does not demonstrate deficient performance with respect to what appears to be a tactical decision.  Mr. Olson fails to establish prejudice because had counsel investigated and presented evidence that Mr. Olson suffered from PTSD, it is unlikely in light of the other compelling evidence that the result would have been different. For purposes of habeas review, Mr. Olson's claim fails because he does not establish that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law. *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003)(citation omitted).

REPORT AND RECOMMENDATION TO DENY
WRIT OF HABEAS CORPUS
- 14 -

**C. Federal claim two: ineffective assistance for failing to call fact witnesses**

Mr. Olson's second claim is that trial counsel's representation was deficient because he failed to call two fact witnesses to corroborate his claim of self-defense. (Ct. Rec. 1 at 45-55.)   The Sacramento County Superior Court stated:

> Petitioner argues that trial counsel failed to call two readily available witnesses, Charles Haynes and Marcel Burnett to corroborate Petitioner's testimony that the victim, Jerome Williams, threatened Petitioner before Petitioner shot Williams. To support the claim, Petitioner has attached three reports of police interviews: two of Haynes and one of Burnett. All three statements corroborate Petitioner's version of the events, wherein the victim asked 'Which one of you guys want to get run over first?' (See Exhibit 6 at p.4) and contradict the victim's version, in which he asked, 'Who's going to get their ass whipped first?' (See Exhibit 6 at p.3). However, the failure to corroborate this one fact was not deficient. First, there is no evidence of how either Haynes or Burnett would have testified: the statements to police were not under oath. Second, Petitioner has not shown that it was not a tactical decision not to call Haynes and Burnett as witnesses. It is likely that had Burnett testified, he would have been called upon to testify that Haynes went to get his 'cousins' to confront Williams and came back with persons later identified as Petitioner and co-defendant Kenny Jordan. (See Exhibit 12 at p. 1.) That testimony would have corroborated the prosecution theory that Haynes, Burnett, Jordan and Petitioner went to confront Williams, which contradicted Petitioner's testimony that he thought the foursome was going to get marijuana.  From the reports, it is apparent that both Haynes and Burnett were cooperating with police. Therefore, it is reasonably likely that Haynes would also have testified that he intended to confront Williams in retaliation for being punched by Williams earlier that day. Such evidence would have been detrimental to Petitioner's case. Therefore, Petitioner has not shown that the failure to call Haynes and Burnett as witnesses was objectively unreasonable.

> Nor has Petitioner shown that the failure to call Haynes and Burnett was prejudicial to Petitioner's case. Petitioner argues that in the absence of Haynes's and Burnett's testimony, the jury was only left with the conflicting testimony of Petitioner and the victim, Williams. However, there was other evidence that corroborated Williams's account. For example, co-defendant Jordan was seen hitting Williams's vehicle with

a hammer that was eventually recovered not far from the scene of the crime. The fact that both Petitioner and Jordan were armed leads to the conclusion that they intended to confront Williams, not that Petitioner was a passive actor who only reacted after being attacked by Williams. In addition, there was evidence that Petitioner ran from the scene of the crime and discarded a black sweatshirt, from which it can be inferred that he was trying to change his appearance, which shows consciousness of guilt. There was also a box of bullets in the car in which Petitioner arrived that matched the caliber and maker (in part) of the bullets in Petitioner's gun. Petitioner claimed to carry the gun everywhere for two years for protection, though he testified no one ever knew he had it, including his girlfriend. Finally, after being arrested, Petitioner told police that he went to confront someone who stole from someone he knew and heard gunshots and fled. Petitioner testified to completely different circumstances. Even if Petitioner could explain that he lied to police because he did not trust police, his "lie" to police is strikingly similar to the facts to which Williams testified, i.e., that Haynes and Williams had a previous argument about Williams stealing a stereo and Haynes promised to come back after being slapped by Williams. Since there was other evidence that supported Williams's version and contradicted Petitioner's version of the facts, Petitioner has not shown that the testimony of Haynes and/or Burnett was reasonably likely to have changed the outcome of the case.

(Lodged Doc. 8 at 1-2.)

The undersigned agrees with the state court's analysis. Error (even if error is assumed) that is unlikely to have changed the outcome of the case fails to establish prejudice necessary to demonstrate ineffective assistance. *Strickland*, 466 U.S. at 694. Moreover, Mr. Olson fails to meet his habeas burden of showing that the state court's decision is contrary to, or involved an unreasonable application of, clearly established federal law, or resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence. *See e.g.*, *Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003). Mr. Olson cites no decision by the United States Supreme Court contrary to the state

REPORT AND RECOMMENDATION TO DENY
WRIT OF HABEAS CORPUS
- 16 -

court's decision which could provide a basis for federal habeas relief. Accordingly, Mr. Olson's second federal claim should be denied.

**D. Federal claim three: evidentiary hearing on Sixth Amendment claims**

Mr. Olson's third habeas claim is that he has been deprived of his constitutional rights because the state court refused to grant him an evidentiary hearing with respect to claimed ineffective assistance. (Ct. Rec. 1 at 70-82.)

On habeas review of claimed ineffective assistance, this court must first determine whether the trial court considered "the underlying merits of the case to come to a tentative conclusion as to whether [a] claim, if properly presented, would be viable," not withstanding the alleged ineffective assistance of counsel. *See Jie Lin v. Ashcroft*, 377 F.3d 1014, 1027 (9th Cir. 2004). As noted with respect to claims one and two, the state court determined that Mr. Olson was not prejudiced by the alleged deficiencies of failing to present a PTSD defense and failing to call two factual witnesses. Accordingly, even if properly presented at an evidentiary hearing, the state court found the claims not viable. The state court properly declined Mr. Olson's request for an evidentiary hearing with respect to claimed ineffective assistance because his claims even if accepted are not viable.

For habeas review, the state court's denial of an evidentiary hearing was not contrary to or an unreasonable application of clearly established federal law. The third  federal habeas claim

should be denied as it is without merit.

**E. Federal claim four: exclusion of evidence of victim's violent character**

Mr. Olson's fourth claim is that the trial court deprived him of a fair trial by excluding proffered evidence of the victim's violent character. (Ct. Rec. 1 at 55-79.) The Third Appellate District stated:

> Defendant claims the trial court erred by excluding what he claims was significant evidence of the victim's violent, dangerous character, and that the alleged error resulted in a violation of his right to due process.
>
> 'Evidence Code section 11103 authorizes the defense in a criminal case to offer evidence of the victim's character to prove his conduct at the time of the charged crime . . . Consequently, in a prosecution for a homicide or an assaultive crime where self-defense is raised, evidence of the violent character of the victim is admissible to show that the victim was the aggressor.' (*People v. Shoemaker* (1982) 135 Cal.App.3d, 442, 446-447, fns. omitted.) Such evidence may be presented in the form of an opinion, evidence of reputation, or evidence of specific instances of conduct. (Evid. Code § 1103, subd. (a).) However, the trial court has discretion under Evidence Code section 352 to exclude evidence if 'its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.' 'Absent a clear showing of abuse, we are compelled to uphold the trial court's exercise of discretion under section 352.' (*People v. Shoemaker, supra*, at p. 449.)
>
> Here, the trial court excluded two types of evidence that defendant claims show the victim's violent character: (1) the specific offenses that resulted in the victim's prior felony convictions; and (2) the fact that he had a crowbar and wooden table leg in his vehicle at the time of the incident. We address each of these issues in turn and conclude by briefly addressing defendant's constitutional argument.
>
> A. Victim's Prior Record
>
> The trial court allowed defendant to impeach the victim's veracity with two felony convictions, but the

REPORT AND RECOMMENDATION TO DENY
WRIT OF HABEAS CORPUS

court did not admit evidence of the specific offenses. The crimes were simply described as felonies involving moral turpitude. The victim's 1992 felony conviction was for possession of a sawed-off shotgun (Pen. Code, § 12020), and his 1993 conviction was for driving a vehicle from which an occupant discharged a firearm (Pen. Code, § 12034, subd. (b)).

In arguing for the broader admission of the prior felony convictions, defense counsel claimed that since defendant claimed he acted in self-defense, 'the alleged victim's prior history of violence becomes admissible.' Counsel emphasized that defendant did not need to know of the prior violent conduct to admit it as character evidence. Counsel said he was unsure whether the offense involving possession of a sawed-off shotgun could be considered a violent offense but argued that the other offense was. Counsel also asserted that sanitizing the victim's record and referring to the crimes as crimes of moral turpitude would lead to speculation by the jury as to what that meant.

The trial court excluded more specific evidence of the victim's prior convictions pursuant to its discretion under Evidence Code section 352. The court initially did not address the issues involving admission of this evidence to show the victim's violent character. However, the court emphasized the remoteness of the prior offenses and the danger the jury would be inflamed against the victim and would consider the evidence in 'an improper fashion.' Defense counsel later raised the issue again while arguing for admission of other evidence that defense claimed showed the victim's violent character, but the trial court concluded that the victim's prior convictions would remain sanitized.

We conclude the trial court did not abuse its discretion. Both of the victim's prior convictions were remote in time, having occurred approximately nine or ten years before the current offenses.  Further, even defendant's trial counsel essentially conceded that one of the offenses (involving possession of a sawed-off shotgun) was not violent conduct. And the other crime of which the victim was convicted apparently did not involve his personal discharge of a firearm; the victim was convicted of driving a vehicle from which a firearm was discharged. Accordingly, the prior offenses were at best weak evidence showing the victim's violent character. Further, the evidence would have been cumulative of the much more probative evidence that the victim had a physical altercation with Haynes earlier the same day of the shooting. Finally, admission of the nature of the victim's prior criminal convictions had the potential to inflame the jury and misdirect it concerning the issues in

REPORT AND RECOMMENDATION TO DENY
WRIT OF HABEAS CORPUS
- 19 -

the current case.

B. Items in Victim's Vehicle

The trial court also excluded evidence that the victim had a crowbar and table leg in his vehicle. The court indicated that it had weighed the evidence pursuant to Evidence Code section 352. The court noted that it was important for the jury to consider the circumstances of which defendant was aware in considering his self-defense claim and that the evidence at issue was not relevant in that respect. The court thought the evidence was not particularly probative of the victim's violent character because there was no evidence the victim had used these items as a weapon or was carrying them for that purpose.

The trial court later held a brief evidentiary hearing on this issue, at which the victim testified outside the presence of the jury. (See Evid. Code, § 402.) The victim indicated he always kept the crowbar in his truck for use as a tool, and that he also had other tools with him. He admitted he also had a table leg in the truck, but claimed the other table legs were scattered throughout his truck. He denied possessing either the bar or the tables legs for use as weapons and claimed he had never used them for that purpose. Following the evidentiary hearing, the trial court declined to modify its prior ruling excluding this evidence.

We conclude the trial court properly exercised its discretion. Again, if this evidence were to be relevant at all, it was necessary that it show the victim's violent character. But the main issue was whether defendant acted in self-defense and it was therefore critical for the jury to consider the facts and circumstances of which he was aware at the time of the shooting. Because the evidence at issue had absolutely no bearing on the latter issue, its admission might reasonably have distracted the jury from its duty. Further, the trial court properly concluded that this evidence had little bearing on the character issue since there was no evidence the victim possessed the table leg and crowbar for use as weapons or that he had previously used them for that purpose. If an object, such as a table leg, is not designed for use as a weapon but is capable of being used as such, it is inferentially necessary that there be some reason to believe the possessor *would* use it as a weapon. (See generally *People v. Fannin* (2002) 91 Cal.App.4th 1399, 1404; *People v. Grubb* (1965) 63 Cal.2d 614, 620-621.)

C. Conclusion

For similar reasons, we reject defendant's argument that the trial court's rulings resulted in a violation of

REPORT AND RECOMMENDATION TO DENY
WRIT OF HABEAS CORPUS
- 20 -

> defendant's constitutional rights. Our State Supreme Court
> has observed that application of the common rules of
> evidence, including Evidence Code section 352, does not
> ordinarily implicate a defendant's right to present
> defense evidence. (*People v. Hillhouse* (2002) 27 Cal.4th
> 469. 496; *People v. Jones* (1998) 17 Cal.4th 279, 305.) And
> considering the weak probative value of the evidence
> offered, as explained above, defendant's constitutional
> rights to a fair trial and to present a defense were not
> impaired.

(Lodged Doc. 4 at 5-10; fn 2 omitted.)

It is well settled under the Sixth Amendment that an accused has the right to present witnesses, testimony and other evidence in his defense. The accused does not, however, have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence. *Taylor v. Illinois*, 484 U.S. 400, 409-410 (1988). States are given considerable latitude under the Constitution to establish rules excluding evidence from criminal trials. *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006). This right is abridged, however, by rules of evidence that infringe upon a weighty interest of the accused and are arbitrary or disproportionate to the purposes the rules are designed to serve. *Id*. "Thus, a trial judge may exclude or limit evidence to prevent excessive consumption of time, undue prejudice, confusion of the issues, or misleading the jury. The trial judge enjoys broad latitude in this regard, so long as the rulings are not arbitrary or disproportionate." *Menendez v. Terhune*, 422 F.3d 1012, 1033 (9th Cir. 2005)(citations omitted); *see Montana v. Egelhoff*, 518 U.S. 37, 42-43 (1996)(holding due process rights are not violated by exclusion of relevant evidence where probative value is outweighed by danger of prejudice or confusion). In considering whether the

REPORT AND RECOMMENDATION TO DENY
WRIT OF HABEAS CORPUS
- 21 -

exclusion of evidence violates due process, this court must consider the probative value of the evidence on the central issue. *United States v. Cruz-Escoto*, 476 F.3d 1081, 1088 (9th Cir. 2007). Finally, assuming exclusion was error, it is subject to harmless-error analysis. *Neder v. United States*, 527 U.S. 1 (1999).

The undersigned agrees with the state court that the trial court properly excluded evidence of the victim's allegedly violent character (in the form proffered) because its low probative value was significantly outweighed by its likelihood of confusing and misleading the jury. However, even if the ruling is viewed as erroneous, any error in excluding the evidence is harmless beyond a reasonable doubt. As the state court correctly notes, the jury considered much more probative evidence of the victim's violent character: the victim's physical altercation with Haynes earlier on the day of the shooting. The excluded evidence is therefore also cumulative to the more probative evidence considered by the jury. The record supports the analysis by the state court that any error in this context was harmless beyond a reasonable doubt as the excluded evidence was clearly cumulative.

With respect to habeas review, Petitioner fails to show the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, or resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence. *See e.g., Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003). Mr. Olson cites no decision by the U.S. Supreme Court contrary to the state court's decision which could provide a basis for federal habeas relief.

Petitioner's forth claim should be denied.

**V.   CONCLUSION**

For the reasons stated above, **IT IS RECOMMENDED** the Petition for Writ of Habeas Corpus (Ct. Rec. 1) be **DENIED.**

**OBJECTIONS**

Any party may object to the magistrate judge's proposed findings, recommendations or report within ten (10) days following service with a copy thereof.  Such party shall file with the Clerk of the Court all written objections, specifically identifying the portions to which objection is being made, and the basis therefor. Attention is directed to Fed. R. Civ. P. 6(e), which adds another three (3) days from the date of mailing if service is by mail.  A district judge will make a de novo determination of those portions to which objection ids made and may accept, reject, or modify the magistrate judge's determination.  The district judge need not conduct a new hearing or hear arguments and may consider the magistrate judge's record and make an independent determination thereon.  The district judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. See 28 U.S.C. § 636 (b) (1) (C) , Fed. R. Civ. P. 73, and LMR 4, Local Rules for the Eastern District of Washington.  A magistrate judge's recommendation cannot be appealed to a court of appeals; only the district judge's order or judgment can be appealed.

The District Court Executive **SHALL FILE** this report and recommendation and serve copies of it on the referring judge and the parties.

**DATED** this 10th day of July, 2009.

REPORT AND RECOMMENDATION TO DENY
WRIT OF HABEAS CORPUS
- 23 -

1

2                                         s/James P. Hutton

3                                    JAMES P. HUTTON
                              UNITED STATES MAGISTRATE JUDGE
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPORT AND RECOMMENDATION TO DENY
WRIT OF HABEAS CORPUS
- 24 -